## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | |
| **Plaintiff,** | **Civil Action No. 17-cv-7390** |
| **v.** | |
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

This is an action under Title I of the Americans with Disabilities Act ("ADA") of 1990, under Title II of the Genetic Information Non-Discrimination Act of 2008 ("GINA"), and under Title I of the Civil Rights Act of 1991 to correct unlawful practices on the basis of disability and genetic information and to provide relief to Kimberly Clifton, Julissa Nunez, Anthony Scarfone, Eugene Buerkle, Frank Mancini, Kenneth Smolka, and Gianfranco Pace as well as   a class of individuals who applied for jobs with Defendant Consolidated Edison Company of New York, Inc. ("Defendant" or "Con Ed") and were subjected to medical examinations before receiving a valid offer of employment, a class of individuals who applied for jobs with Defendant who were not hired after their pre-employment medical examination because of their actual or perceived disability, and a class of applicants from whom Defendant requested genetic information as a condition of employment. As explained in more detail in paragraphs 17, 18, 19, and 21 below, Kimberly Clifton, Julissa Nunez, Anthony Scarfone, and Eugene Buerkle (collectively "Aggrieved Applicants"), and a class of similarly aggrieved individuals applied for jobs with

1

Defendant Con Ed, successfully completed the examination and interview process, but were rejected because of their actual or perceived disabilities after pre-hire medical examinations with Defendant's Occupational Health Department. Moreover, before the medical examinations, Defendant did not provide valid offers of employment. And during the medical examinations Defendant illegally requested genetic information from all applicants. Finally, Frank Mancini, Kenneth Smolka, and Gianfranco Pace (collectively "Aggrieved Employees") are, or were, employees of Defendant. Defendant's Occupational Health Department imposed work restrictions on them because of their disabilities which led to reduced hours and even termination.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), and Section 207(a) of the Genetic Information Non-Discrimination Act of 2008 ("GINA"), 42 U.S.C. § 2000ff-6(a), both of which incorporate by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The unlawful acts alleged below were committed within the jurisdiction of the United States District Court for the Southern District of New York.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and Title II of the GINA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), and by Section 207(a) of the

2

GINA, 42 U.S.C. § 2000ff-6(a), both of which incorporate by reference Sections 706(f)(1) and

(3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.     Defendant Con Ed is a utility that provides electrical and gas service to New York

City and Westchester County.

5.     At all relevant times, Defendant has been a corporation doing business in New

York.

6.     At all relevant times, Defendant has had at least fifteen (15) employees.

7.     At all relevant times, Defendant has continuously been an employer engaged in an

industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§

12111(5), (7) and under Section 201(2)(B)(i) of the GINA, 42 U.S.C.§ 2000ff(2)(B)(i), which

incorporate by reference Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and

(h).

8.     At all relevant times, Defendant has been a covered entity under Section 101(2) of

the ADA, 42 U.S.C. § 12111(2).

9.     At all relevant times, Defendant has continuously had more than 500 employees.

## ADMINISTRATIVE PREREQUISITES

10.    More than thirty (30) days prior to the institution of this lawsuit, the Aggrieved

Applicants and Aggrieved Employees filed charges with the EEOC, alleging violations of the

ADA and GINA by Defendant.

11.    On October 20, 2015, the EEOC issued Defendant a Letter of Determination

finding reasonable cause to believe that Defendant violated the ADA and GINA.

12.    The EEOC invited Defendant to join with the EEOC in informal methods of

conciliation to endeavor to eliminate its unlawful practices and provide appropriate relief.

13.    The EEOC engaged in communications with Defendant to provide Defendant the

opportunity to remedy the discriminatory practices described in the Letter of Determination.

14.     The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

15.     On April 14, 2017, the EEOC issued to Defendant a Notice of Failure of Conciliation.

16.     All conditions precedent to the institution of this suit have been fulfilled.

### STATEMENT OF CLAIMS

17.     Since at least January 20, 2012, Defendant has engaged in unlawful employment practices in violation of Section 102(c) of the ADA, 42 U.S.C. § 12112(d)(1). Defendant has conducted unlawful medical examinations on job applicants without first extending a valid conditional offer of employment.

    a.  Kimberly Clifton applied for a position with Defendant as a Customer Field Representative. On January 24, 2012, Clifton was required to attend a pre-employment medical exam with Defendant's Occupational Health Department. Clifton did not receive a valid offer of employment before her examination.

    b.  Julissa Nunez applied for a position with Defendant as a Customer Service Representative. On October 12, 2012, Nunez was required to attend a pre-employment medical examination with Defendant's Occupational Health Department. Nunez did not receive a valid offer of employment before her examination.

    c.  Anthony Scarfone applied for a position as a Customer Field Representative with Defendant. On March 1, 2011, and November 21, 2012, Scarfone was required to attend pre-employment medical

4

examinations with Defendant's Occupational Health Department. Scarfone did not receive valid offers of employment before each examination.

18.    Since at least January 20, 2012 Defendant engaged in unlawful employment practices in violation of Title I of the ADA Section 102(a), 42 U.S.C. § 12112(a), by refusing to hire qualified applicants because of their actual or perceived disabilities. The class of such applicants includes, but is not limited to:

    a.    Kimberly Clifton is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Clifton has an impairment that substantially limits major life activities for which she has taken the same does of medication for more than a decade without any harmful side effects. Defendant refused to hire Clifton for a position as a Customer Field Representative after her pre-employment medical examination because of her disability.

    b.    Defendant perceived Clifton as having a motor impairment due to the medication that she took to control her disability that substantially limited her ability to drive. Defendant refused to hire Clifton for a position as a Customer Field Representative because of her  impairment.

    c.    Julissa Nunez is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Nunez has an impairment, depression, which substantially limits major life activities and Nunez has a record of depression. Defendant refused to hire Nunez for a position as a Customer Service Representative after her pre-employment

medical examination because of her depression.

d.   Defendant perceived Nunez as having an impairment, depression, and it
     refused to hire her because of her depression.

e.   Anthony Scarfone is a qualified individual with a disability under Sections
     3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Scarfone has
     an impairment, attention deficit and hyperactivity disorder ("ADHD"),
     which substantially limits major life activities, and a record of ADHD.
     Defendant refused to hire Scarfone for a position as a Customer Field
     Representative after his pre-employment medical examination because of
     his ADHD.

f.   Defendant perceived Scarfone as having an impairment, ADHD, that
     limited his ability to work unsupervised. Defendant refused to hire
     Scarfone because of his ADHD.

g.   Eugene Buerkle is a qualified individual with a disability under Sections 3
     and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Buerkle has a
     record of an impairment, epilepsy, that substantially limits major life
     activities. Defendant refused to hire Buerkle for a position as a project
     specialist after his pre-employment medical examination because of his
     record of epilepsy.

h.   Defendant perceived Buerkle as having an impairment, epilepsy, that
     prevented him from driving, working at elevation, or in areas that required
     protective equipment. Defendant refused to hire Buerkle because of his
     epilepsy.

19.      On or about March 10, 2014, Defendant engaged in unlawful employment

practices in violation of Title I of the ADA Section 102(a), 42 U.S.C. § 12112(a), by

involuntarily transferring Frank Mancini to a position with lower pay and a risk of termination

because of his disability:

   a. Mancini is a qualified individual with a disability under Section 3 and

      101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Mancini has an

      impairment, diabetes, that substantially limits major life activities.

   b. Mancini worked as a Mechanic B in Defendant's Manhattan Gas

      Operations Unit. In this position, he earned substantial overtime

      compensation.

   c. After a medical examination by Defendant's Occupational Health

      Department, Defendant restricted Mancini from driving on the job.

      However, Mancini's diabetes did not affect him in any way that prevented

      him from safely operating a motor vehicle.

   d. On or about March 10, 2014, Defendant removed Mancini from his

      position in the Manhattan Gas Operations Unit because of the driving

      restriction. Defendant transferred Mancini into a position where he was

      unable to earn overtime and had six months to pass an examination for

      another job at Defendant or be fired.

   e. Even if Defendant was correct to restrict Mancini from driving on the job,

      he could have performed the essential functions of his position in the

      Manhattan Gas Operations Unit without ever driving the company vehicle.

   f. Despite there being no substantial change in Mancini's diabetes,

7

Defendant removed his driving restriction and transferred him back to the

Manhattan Gas Operations Unit on August 5, 2014.

20.     Beginning September 12, 2012, Defendant engaged in unlawful employment

practices in violation of Title I of the ADA Section 102(a), 42 U.S.C. § 12112(a), by refusing to

allow Gianfranco Pace to work and eventually terminating him because of his disability:

      a.   Pace is a qualified individual with a disability under Section 3 and 101(8)

of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Pace has impairments,

epilepsy and sleep apnea, that substantially limit major life activities. He

also has a record of these impairments.

      b.   Pace worked as a Technical Supervisor in Defendant's Steam Operations

East River Station. His disabilities did not affect his work performance.

      c.   On August 28, 2012, Pace was in a car accident outside of work. He

briefly hospitalized and was out of work for a brief period.

      d.   Even though Pace's disabilities had not impacted his performance at work

during his time working for Defendant, its Occupational Health

Department found him unfit for duty because of them when it examined

him upon his return to work on September 12, 2012.

      e.   Despite providing all the medical documentation that Defendant's

Occupational Health Department requested, it never medically cleared

Pace to return to work.

      f.   On April 17, 2013, Pace exhausted his sick leave and was terminated.

21.     Beginning on or about October 2012, Defendant engaged in unlawful

employment practices in violation of Title I of the ADA Section 102(a), 42 U.S.C. § 12112(a),

8

by restricting Kenneth Smolka's hours because of his disability:

a. Smolka is a qualified individual with a disability under Section 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Smolka has an impairment, insulin-dependent diabetes, that substantially limits major life activities. He also has record of this impairment.

b. Smolka is an Operating Mechanic B at Defendant's Liquified Natural Gas Plant in Astoria, New York.

c. After his annual medical exam with Defendant's Occupational Health Department placed a number of restrictions on Smolka's performance of his job because of his diabetes: no driving, no work involving the safety of others, no work above unprotected floor levels, and no work around unprotected equipment.

d. Smolka protested these restrictions and provided records from his doctor indicating that his diabetes was under control.

e. Nonetheless, Defendant made these restrictions permanent. Because of these restrictions, in October 2012, Smolka was removed from an overnight shift that required him to be responsible for the safety of others. This shift was the source of significant overtime compensation.

f. Smolka continued to provide additional medical evidence that his diabetes was under control. However, Defendant did not return him to his overnight shift until November 3, 2013.

22.     Since at least January 20, 2012, until sometime in 2013 Defendant has engaged in unlawful employment practices in violation of Section 202 of Title II of the GINA, 42 U.S.C. §

2000ff-1(b). Specifically, Defendant requested that each applicant during that period provide genetic information of the applicant's family members as part of the pre-employment medical examination that was a condition of employment.

23.     The unlawful employment practices complained of in paragraphs 17, 18, 19, 20, 21, and 22 above were and are intentional.

24.     The unlawful employment practices complained of in paragraphs 17, 18, 19, 20, 21, and 22 are and were done with malice or with reckless indifference to the federally protected rights of the Aggrieved Applicants and Aggrieved Employees, as well as the class of individuals who applied for jobs with Defendant and were subjected to medical examinations before receiving a valid offer of employment, the class of individuals who applied for jobs with Defendant who were not hired after their pre-employment medical examination because of their actual or perceived disability, and the class of individuals from whom Defendant requested genetic information as part of their pre-employment medical examination.

## PRAYER FOR RELIEF

WHEREFORE, the EEOC respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from engaging in any employment practices which discriminate on the basis of disability;

B.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from requesting genetic information from applicants or employees;

C.  Order Defendant to institute and carry out policies, practices and programs which provide and ensure equal employment opportunities for its employees regardless of disability and

which eradicate the effects of its past and present unlawful practices;

D. Order Defendant to make Aggrieved Applicants, Aggrieved Employees, the class of applicants who Defendant gave medical examinations before extending a valid job offer, and the class of applicants who were not hired after their pre-employment medical examinations because of their actual or perceived disability whole by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including rightful-place instatement or reinstatement;

E. Order Defendant to make Aggrieved Applicants, Aggrieved Employees, the class of applicants who Defendant gave medical examinations before extending a valid job offer, and the class of applicants who were not hired after their pre-employment medical examination because of their actual or perceived disability whole by providing compensation for past pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

F. Order Defendant to make Aggrieved Applicants, Aggrieved Employees, the class of applicants who Defendant gave medical examinations before extending a valid job offer, and the class of applicants who were not hired after their pre-employment medical examination because of their actual or perceived disability whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, humiliation, and inconvenience, in amounts to be determined at trial;

G. Order Defendant to pay Aggrieved Applicants, Aggrieved Employees, the class of applicants who Defendant gave medical examinations before extending a valid job offer,

11

and the class of applicants who were not hired after their pre-employment medical examination because of their actual or perceived disability punitive damages to for its malicious and reckless conduct described above, in an amount to be determined at trial;

H. Grant such further relief as the Court deems necessary and proper in the public interest; and

I. Award the EEOC its costs in this action.

## **JURY TRIAL DEMAND**

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Date: September 27, 2017
New York, New York

Respectfully Submitted,

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M. Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney

JUSTIN MULAIRE
Supervisory Trial Attorney


/s/_____
SEBASTIAN RICCARDI
Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, Fl. 5
New York, NY 10004
(212) 336-3698
Sebastian.riccardi@eeoc.gov